IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br>v.<br><br>**OSVALDO PASTRANA-ROMÁN,**<br>Defendant. | Criminal No. 19-104 (ADC) |

### REPORT AND RECOMMENDATION

### I.   Introduction

On February 13, 2019, Osvaldo Pastrana-Román was charged with violations of 18 U.S.C. §924(c)(1)(A), 18 U.S.C. §924(c)(1)(B)(ii), 18 U.S.C. §922(g)(1), 18 U.S.C. §922(o), and three counts of violations to 21 U.S.C. § 841(a)(1). Docket No. 13. Defendant filed a motion to suppress and supplement thereto. Docket Nos. 44, 52 and 65. The Government opposed. Docket Nos. 49 and 70. Defendant replied. Docket No. 76. Defendant argues that the search, which was conducted at night, was unreasonable because the warrant did not authorize night execution. He further argues that his consent to the search of the house was not valid or voluntary. Defendant moved to suppress the evidence seized from his house and any incriminating statements made by him during the search.

The motion was referred to the undersigned for an evidentiary hearing and a Report and Recommendation. Docket No. 88. An evidentiary hearing was held on December 8, December 9, and December 12, 2022. The Government called agent Christopher Atiles-Cruz and agent Isaac Salas-Ramírez, both from the Puerto Rico Police Department ("PRPD"). The defense called FPD Investigator Anthony Toro-Sambrana and PRPD Sergeant Pedro Colón-Burgos. Evidence was admitted. The parties submitted post-hearing briefs. Docket Nos. 115-116. After carefully considering the evidence presented during the hearing, the Court recommends that Defendant's motion to suppress be **DENIED**.

## II. Factual Background

The following account is drawn from the evidence, testimonial and documentary, received at the suppression hearing.

On January 18, 2019, Atiles-Cruz worked as an Investigating Officer of the Stolen Vehicles Division of the PRPD in Aguadilla. Transcript of Evidentiary Hearing ("TR") 9 ¶¶ 9-10. That day, however, he was assigned to provide support to the Stolen Vehicles Division in Bayamón. TR 10 ¶ 5. There, he received instructions to investigate a confidential complaint that informed that stolen vehicles (Kia and Hyundai) were being hidden in a property located at El Juicio Sector in Bayamón. TR 10 ¶¶ 10-12, 21-22. On that same day, Atiles-Cruz went to the area where the property was located and conducted surveillance from a "strategic point" where he could see the entrance of the property and the residence. TR 11 ¶¶ 4-8, TR 12 ¶¶ 16-18, TR 13 ¶¶ 9-13, TR 67 ¶¶ 2-13. No criminal activity was observed on January 18, 2019. TR 48 ¶¶ 1-13. Atiles-Cruz returned to the property on January 21, 2019, to continue the surveillance of the property. At about 4:30 p.m., Atiles-Cruz saw a modern Hyundai Accent enter the property; the car had no license plate and a forced door in the driver's side. TR 14 ¶¶ 5-9, TR 45 ¶¶ 21-25, TR 48 ¶¶ 1-13.

On January 21, 2019, at 9:55 p.m., Atiles-Cruz submitted a sworn statement to a state court judge; Sworn Statement No. 1170. Government Exhibit 1-A. Atiles-Cruz described the residence in detail and the vehicle to be searched. Id. Atiles-Cruz requested a search warrant for stolen vehicles and stolen vehicle parts located in the property and requested authority to conduct the search during the day or night. Id. The sworn statement was signed, as approved by the state judge, on January 21, 2019. Id. And a search warrant was issued on that same day at 9:55 p.m., containing the description of the residence, the vehicle to be searched, and a reference to Atiles-Cruz's sworn statement. Government Exhibit 2-A. The search warrant does not contain an express provision to allow for execution at night but did grant authority to search for the stolen vehicle and stolen vehicle parts in the property. Id.

On January 21, 2019, Salas-Ramírez, also temporarily assigned to the PRPD Stolen Vehicles Division in Bayamón, was assigned the execution of the search warrant. TR 107 ¶¶ 24-25. The execution took place at about midnight on January 22, 2019. TR 79 ¶¶ 6-8. As testified, agents of the PRPD opened the gate of the property and, while walking towards the residence, saw the Defendant come out with no shirt, black pants and a firearm. TR 80 ¶¶ 14-17. When he saw

the agents, the Defendant went inside the residence. The Defendant finally came out of the residence ten (10) minutes later in response to requests by the agents, this time without a firearm. TR 81 ¶¶ 10-15, TR 82 ¶¶ 2-12, TR 83 ¶¶ 13-17. The Defendant was informed of the search warrant, he was given the warrant to read, and he placed his initials in the search warrant. TR 83 ¶¶ 1-2, TR 83 ¶¶ 20-25, TR 87 ¶¶ 10-14, TR 107 ¶¶ 16-25. See also Government Exhibits 2-4. Salas-Ramírez clarified his testimony when he stated that the Defendant was informed that the agents had a search warrant that permitted them to search the property for stolen vehicles and parts of stolen vehicles. TR 105 ¶¶ 8-15, TR 119 ¶¶ 14-17. Thereafter, the Defendant was informed of his rights under Miranda, he read the form provided by law enforcement and signed it. TR 92 ¶¶ 4-11, TR 97 ¶¶ 20-22, TR 107 ¶¶ 12-18, TR 126 ¶¶ 2-17. Government Exhibit 10. The Government presented photographs of the Defendant while signing the form with the Miranda warnings. See Government Exhibits 8-9.

Defendant was then asked whether he had a weapons permit. When he said he did not, the agents asked for consent to search the home and provided Defendant with a consent form. TR 132 ¶¶ 5-15. As testified, the Defendant wrote his name on the form, which was then filled out by the agent before the Defendant signed the form. TR 88 ¶¶ 3-16, TR 89 ¶¶ 4-17, TR 91 ¶¶ 9-20. See Government Exhibit 5-A, 6-7. The consent form describes the residence to be searched. Government Exhibit 5-A. Defendant had questions about the consent form but was told that, if he did not consent, a warrant for the home would be forthcoming. TR 98 ¶¶ 10-12, 21-22, TR 100 ¶¶ 19-25. Per the testimony of Salas-Ramírez, the Defendant read all the documents presented to him, although nervous, he did not appear to be confused and appeared to understand the documents, was not in handcuffs, and did not have any restraints when presented with the documents. TR 99 ¶¶ 14-25, TR 107 ¶¶ 3-17, TR 119 ¶¶ 21-23, TR 120 ¶¶ 9-11, TR 124 ¶¶ 4-10. Although Salas-Ramírez admitted that the Defendant was not at liberty to leave when he was presented with the consent form, he testified that there were no weapons pointed at the Defendant at that time and that no one raised their voice to the Defendant in the process of obtaining consent. TR 99 ¶¶ 18-25, TR 107 ¶¶ 3-17, TR 130 ¶¶ 17-22, TR 133 ¶¶ 15-24, TR 134 ¶¶ 2-8.

### III. Applicable Law and Analysis

**1. Defendant was not entitled to a hearing under <u>Franks</u>.**

In the motion to suppress originally filed by Defendant, he asserted that Atiles-Cruz lacked probable cause to request the warrant to search for the stolen vehicle and stolen vehicle parts in his property. Docket No. 44. Defendant filed a Sworn Statement under Penalty of Perjury in support of his request. Docket No. 52-1. But there is absolutely nothing in the sworn statement to infer that the search warrant in this case was procured through false statements or material omissions. <u>Id</u>. For this reason, the Court, through then U.S. Magistrate Judge Vélez-Rivé, expressed that it would recommend the denial of a hearing under <u>Franks</u>. Docket No. 62. The Defendant tried to resurrect this request during the hearing and in his post-hearing brief. To no avail.

A defendant is entitled to an evidentiary hearing under <u>Franks</u> when he makes a "substantial preliminary showing" that **both**: (1) a false statement, knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause. <u>Franks v. Delaware</u>, 438 U.S. 154, 155–56 (1978). A showing that a material omission was made could also constitute the basis for a <u>Franks</u> hearing. <u>United States v. Rivera Rosario</u>, 300 F.3d 1, 20 (1st Cir. 2002). When the request is based on false statements, the Court must consider whether the false statements were necessary for the finding of probable cause. <u>United States v. Barbosa</u>, 896 F.3d 60, 68 (1st Cir. 2018); <u>United States v. Castillo</u>, 287 F.3d 21 (1st Cir. 2002). When the request is based on material omissions, the Court must consider whether inclusion of the omissions would have led to a finding of no probable cause. <u>Id.</u>

The Defendant presented photographs of the entrance of his property, of two white tents inside the property, and of cars parked under the tents and in the property, to challenge Atiles-Cruz's ability to observe the residence at the time of surveillance, and to point to information that Atiles-Cruz omitted in the affidavit submitted in support of the search warrant. Defendant Exhibits A, B, H and I. The defense also presented the testimony of FPD Investigator Toro-Sambrana to put into question Atiles-Cruz's ability to observe the residence during surveillance. <u>See also</u> <u>arguments</u> at Docket No. 115 at pp. 4-7. In post-hearing arguments, the Defendant also argues that

Atiles-Cruz's surveillance was not corroborated by his supervisor. This is insufficient to warrant a hearing under Franks.

The photographs of the property taken years after the surveillance are not probative of the state of the property when surveillance was performed. There is nothing in the record to contradict Atiles-Cruz's testimony that he had visibility of the property on the two days that he performed the surveillance. But most importantly, there is absolutely nothing that could lead the Court to disregard Atiles-Cruz's observation of what appeared to be a stolen vehicle entering the property on the second day of surveillance. See United States v. Andujar-Ortiz, 575 F. Supp. 2d 373, 377 (D.P.R. 2008) (citations omitted). And the argued omissions (exclusion of the white tents and other cars in the property) in Atiles-Cruz's affidavit, if included in the affidavit, would not have led to a finding of no probable cause. See U.S. v. McLellan, 792 F.3d 200, 210 (1st Cir. 2015). On the contrary, the inclusion of details pertaining to additional cars in the property could have likely bolstered the finding of probable cause in this case.

Further, even assuming for purposes of discussion that Atiles-Cruz's surveillance of the property and its corroboration was deficient, Defendant did not offer any evidence that could lead the Court to conclude that Atiles-Cruz had serious doubts as to the truth of his statements. See United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (failure to investigate fully is not enough to establish reckless disregard for the truth required under Franks; there must be a showing that the affiant had serious doubts as to the truth of the allegations). In the papers submitted before the hearing and even after submitting evidence during the hearing, Defendant did not make a substantial showing that a false statement or an omission of a material fact **was made knowingly and intentionally, or with reckless disregard for the truth** by Atiles-Cruz when applying for the search warrant in this case. Franks v. Delaware, 438 U.S. at 155–56 (emphasis added). The Defendant was not entitled to a hearing under Franks.

**2. The Court will not strike the testimony of Atiles-Cruz.**

After the conclusion of Atiles-Cruz's direct examination, the defense requested production of any notes taken by Atiles-Cruz during surveillance. Atiles-Cruz testified that he did prepare notes. TR 26 ¶¶ 15-17. But after an opportunity to search for the notes, he testified that he was unable to find the notes. TR 178 ¶¶ 18-19. Atiles-Cruz did explain, however, that all that was contained in the notes was ultimately included in the affidavit submitted in support of the search

warrant. TR 179 ¶¶ 19-2, TR 183 ¶¶ 2-19. The Defendant moved to strike the testimony of Atiles-Cruz for violations to Fed.R.Crim.P. 26.2 and Jencks. The Court will not strike the testimony.

Rule 26.2(a) of the Federal Rules of Criminal Procedure provides that, after a witness has testified on direct examination, the witness must "produce, for the examination and use of the moving party, any statement of the witness that is in [the government's] possession and that relates to the subject matter of the witness's testimony." Fed.R.Crim.P. 26.2(a). A "statement" is a statement in writing, which the witness makes and signs or adopts and approves. Fed.R.Crim.P. 26.2(f). This same obligation exists in the Jencks Act, 18 U.S.C. § 3500(b) and (e)(1); United States v. Sorrentino, 726 F.2d 876, 887 (1st Cir.1984); United States v. Tribble, 559 F.Supp.3d 41, 47 n.2 (D.P.R. 2021). To establish that notes should be produced under Fed.R.Crim.P. 26.2 or Jencks, the defense must demonstrate that (1) the notes are considered a "statement"; (2) the notes were "in the possession of the United States"; and (3) the statement is related to the subject matter to which the witness testified during direct examination. 18 U.S.C. § 3500(b). "If the party who called the witness disobeys an order to produce or deliver a statement, the court must strike the witness's testimony from the record." Fed. R. Crim. P. 26.2(e); see also 18 U.S.C. § 3500(d).

There is no question that the notes at issue are related to the subject matter to which Atiles-Cruz testified in direct examination. However, the defense would have a hard time establishing that the notes are "statements" and that these were in the possession of the United States. Notes prepared by law enforcement during surveillance are not statements if these were not "adopted" and "approved" by the agent. See United States v. Melo, 411 F.Supp.2d 17, 22-24 (D.Mass. 2006) (quoting United States v. Bernard, 623 F.2d 551, 557–58 (9th Cir.1979) (agent's notes during surveillance not Jencks) (citations omitted); United States v. Maldonado-Pena, 4 F.4th 1, 28 (1st Cir. 2021) (rough notes not "approved" not statements under Jencks). And, per the testimony of Atiles-Cruz, his notes were used to prepare the affidavit in support of the search warrant but "didn't go to the federal side" when the case was transferred to federal agents. TR 178 ¶¶ 12-25, TR 179 ¶¶ 1-25, TR 180 ¶¶ 1-12.

Further, even assuming for purposes of discussion that the defense could establish that Atiles-Cruz's notes were "statements" "in the possession of the United States", the Defendant's request to strike the testimony of Atiles-Cruz is nonetheless unavailing. Despite the language of the rule and the statute, the First Circuit has established that "to succeed on a claimed violation of

the Jencks Act, defendants must demonstrate that they have been prejudiced by the failure to disclose." United States v. Rosario-Peralta, 175 F.3d 48, 53 (1st Cir. 1999); see also United States v. Principe, 499 F.2d 1135, 1136–39 (1st Cir. 1974) (sanction of striking witness is not automatic; court is to weigh all considerations); United States v. Arboleda, 929 F.2d 858, 865 (1st Cir. 1991); United States v. Sandoval, 6 F.4th 63, 90 (1st Cir. 2021) (quoting United States v. Nelson-Rodríguez, 319 F.3d 12, 35 (1st Cir. 2003)("the Jencks Act does not 'provide […] grounds for relief unless the exclusion or failure to produce prejudiced [the] defense.'")). As testified, the notes taken by Atiles-Cruz during surveillance were all incorporated into the affidavit submitted in support of the search warrant. The Defendant was able to cross examine Atiles-Cruz as to all the information contained in the affidavit. The Defendant was not prejudiced.

### 3. The Court will take judicial notice of PRPD General Order 612.

The Defendant requested that the Court take judicial notice of the Puerto Rico Police Bureau General Order 612 ("General Order 612"), alleging that it sets forth the agency's guidelines concerning searches and seizures. Docket Nos. 99, 99-1, 114. The Government objects on relevancy grounds. Docket No. 103.

Rule 201(b) of the Federal Rules of Evidence establishes that the Court can take judicial notice of an adjudicative fact that "1) is generally known within the court's territorial jurisdiction; or 2) can be accurately and readily determined by sources whose accuracy cannot be reasonably questioned." Fed.R.Evid. 201(b). However, Rule 201(b) only governs judicial notice of adjudicative facts, not the law. Fed.R.Evid. 201(a); United States v. Dávila-Nieves, 670 F.3d 1, 9 (1st Cir. 2012) ("The short answer is that Rule 201 applies when a court takes judicial notice of adjudicative facts, not when it takes judicial notice of law, as it did here."). General Order 612 does not contain adjudicative facts. However, the Court may take judicial notice of General Order 612 as a matter of law. Getty Petroleum Mktg., Inc. v. Cap. Terminal Co., 391 F.3d 312, 320 (1st Cir. 2004) (quotation omitted). Indeed, this District Court has taken judicial notice of General Orders of the PRPD. See Whitfield v. Meléndez-Rivera, 431 F.3d 1, 17 n.5 (1st Cir. 2005); González-Pérez v. Dávila, 680 F.Supp.2d 347, 352 (D.P.R. 2009). The Government argues that General Order 612 is irrelevant because it was not in effect in January of 2019. However, General Order 612 establishes an effective date of September 18, 2017 (Docket No. 114 at 1) and Sergeant

Andres Delucchi Olivares certified that it has been in effect since September 18, 2017, as revised in August 2021. Docket No. 99-3.

### 4. The search conducted at night did not violate the Fourth Amendment.

The Defendant moved to suppress all evidence seized in the execution of the search warrant procured by Atiles-Cruz, including the evidence seized from Defendant's house after he signed the consent form. The argument is that the warrant did not authorize the search at night but was executed at midnight on January 22, 2019. While the Defendant is correct that the warrant did not **expressly** authorize its execution at night, the case law discussed below counsels against applying the exclusionary rule.

The Fourth Amendment of the United States Constitution protects the right of people against unreasonable searches and seizures and provides that warrants will not issue but upon a showing of "probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV. Absent exceptional circumstances, law enforcement must obtain a warrant from a neutral and disinterested magistrate before conducting a search. A warrant is obtained when law enforcement establishes that there is probable cause that evidence of a crime will be found in the place to be searched. As reaffirmed by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 231 (1983), the standard of probable cause is practical and nontechnical. It does not require hard certainties, but mere probabilities as ascertained by reasonable and prudent persons (making common sense conclusions) not legal technicians. Id. (citations and quotations omitted). A magistrate judge's determination of probable cause is entitled to great deference. Id. at 236; United States v. Spinosa, 982 F.2d 620, 626 (1st Cir. 1992) (citations omitted).

The Fourth Amendment prohibits "unreasonable searches and seizures". A search may be "unreasonable" depending on the manner and time in which it is conducted. United States v. McCarty, 475 F.3d 39, 43 (1st Cir. 2007). The warrant in this case was authorized by a Puerto Rico judge and was executed by state law enforcement officers. Rule 34 of the Puerto Rico Rules of Criminal Procedure establishes that a search warrant must indicate that its execution will be during the day, unless the judge, after considering factors of need and urgency, authorizes execution at night. 34 P.R.Laws Ann. Ap. II, § 231. This same requirement is included in General Order 612. Docket No. 114 at p. 8. General Order 612 also requires that PRPD officers show a reasonable

probability that the evidence to be seized or the person to be searched is at the specified location, or that the evidence might be removed, concealed, or destroyed before daybreak, or that the police operation would be safer or more successful if the search is conducted at night. Id. These requirements are like those in Rule 41(e) of the Federal Rules of Criminal Procedure; that a search warrant is to be executed during daytime "unless the judge for good cause expressly authorizes execution at another time." Fed.R.Crim.P. 41(e)(2)(A)(ii). Daytime means between 6:00 a.m. and 10:00 p.m. Fed.R.Crim.P. 41(2)(B).[1]

There is no dispute that in the affidavit submitted by Atiles-Cruz to the state judge he sought permission to conduct the search at night. Government Exhibit 1-A. There is also no dispute that the warrant was issued on the same date and time as the affidavit submitted by Atiles-Cruz. Government Exhibit 2-A. And although the search warrant does not contain an express provision to allow for execution at night, it was issued at 9:55 p.m. and references Atiles-Cruz's Sworn Statement No. 1170. Id. The state judge also placed her initials twice in the affidavit submitted by Atiles-Cruz. Government Exhibit 1-A. The question then is whether the warrant sufficiently incorporated by reference the request for night service that was made by Atiles-Cruz in the affidavit.

Pursuant to Rivera Rodríguez v. Beninato, 469 F.3d 1, 5 (1st Cir. 2006), when a warrant sufficiently incorporates by reference the affidavit submitted by law enforcement, the affidavit may be deemed to have cured deficiencies found in the warrant. Id. (warrant that stated "see attached affidavit" sufficient to cure deficiency in warrant). See also United States v. Burgos-Montes, 786 F.3d 92, 108 (1st Cir. 2015) ("See also the attached affidavit, which is hereby incorporated and made part hereof" sufficiently incorporates the affidavit to satisfy the particularity requirement). The judge in this case wrote the words "Aff #1170" just above her signature in the warrant. She also placed her initials twice in the affidavit submitted by Atiles-Cruz. Arguably, this was sufficient to incorporate by reference Atiles-Cruz's request for a night

---

[1] The Court will consider whether the search was reasonable under the Fourth Amendment. See United States v. Mitro, 880 F.2d 1480, 1485-1486 (1st Cir. 1989) (when case involves a state warrant the question is whether the warrant satisfied constitutional requirements and did not contravene any rule-embodied policy); United States v. Syphers, 426 F.3d 461, 468 (1st Cir. 2005) ("[T]he Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in federal prosecution.") (citations omitted).

9

search. See e.g., Rivera Rodríguez v. Beninato, 469 F.3d at 5 (enough if reasonable officer could believe the warrant to be sufficient to authorize the night search). The foregoing conclusion is also reasonable because the judge did not strike the officer's request for a night search nor expressly instructed for the search to be conducted during the day.[2] Nonetheless, the Court considers whether, assuming that no such incorporation was done, the night search was unreasonable in violation of the Fourth Amendment.

It may be contended that there are constitutional limitations on the time when a search warrant may be executed. W.R. LaFave, 2 Search and Seizure, A Treatise on the Fourth Amendment at § 4.7 (6th ed. 2020). But the matter is not settled. W.E. Ringel, 1 Searches & Seizures, Arrests and Confessions at § 6:5 (2d ed. 2020) (the constitutional context of night intrusions in homes remains undefined). "Consequently, the operation of the exclusionary sanction in cases in which the officers have failed to comply with such provisions is uncertain." Id. And it is unlikely that a violation of Rule 41's night provision would result in exclusion. 27 Moore's Federal Practice at § 641.21[3][g] (3d ed.).

Although the language of the Fourth Amendment explicitly sets out the requirements for a valid warrant, there is no specific provision on the time of day during which the warrant must be executed. United States v. Gibbons, 607 F.2d 1320, 1326 (10th Cir. 1979). And the U.S. Supreme Court has not resolved whether statutory restrictions pertaining to the time in which a warrant is executed have a basis in the reasonableness clause or the warrant clause of the Fourth Amendment. W.E. Ringel at § 6:5 (discussing Gooding v. United States, 413 U.S. 430 (1974)). Case law from various circuits have drawn a distinction between procedural violations and constitutional violations in the execution of search warrants. For instance, in United States v. Burke, 517 F.2d

---

[2] The Government argued that because the warrant stated that law enforcement could search for "stolen vehicles and/or stolen vehicle parts [and] bring them immediately" to court, and because the warrant was authorized at 9:55 p.m., the judge authorized night execution. However, the above quoted language merely establishes that, once executed, the property seized was to be brought immediately to court. The language does not imply that execution was to be done immediately after 9:55 p.m. Compare United States v. Resto-Quiñonez, 915 F.Supp. 507, 510 (D.P.R. 1996) (when affidavit requested nighttime execution and the magistrate judge authorized the immediate search in a warrant that was issued at 11:45 p.m., night search was specifically authorized); United States v. Sturgeon, 501 F.2d 1270, 1274 (8th Cir. 1974) (warrant secured at night authorized an immediate search).

377, 385 (2d Cir. 1975), the Second Circuit discussed the failure of a warrant to conform to procedural provisions of Rule 41 and the failure of a warrant to conform with constitutional requirements such as probable cause and the particularity of things to be searched. The court in Burke expressed that "courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude". Id. And held that procedural defaults should not lead to exclusion unless: (1) there is a showing of prejudice, in the sense that the search would not have occurred or would not have been so abrasive if the Rule 41 had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision of the rule by law enforcement. Id. The Sixth Circuit in United States v. Searp, 586 F.2d 1117, 1122 (6th Cir. 1978), this time in the context of a night search, distinguished between the right to be free from unnecessary and frightening intrusions in a home at the night and the procedures established to protect that right. Id. The Court in Searp concluded that, when the affidavit did not contain supporting facts to show a particular need for a night search and the warrant lacked specific authorization for a night search, Rule 41 had been violated. Id. But that such a violation was not of constitutional magnitude. The Searp court held that suppression was not warranted when there had not been a showing of bad faith by law enforcement and the magistrate would have authorized the search anyway or the search had not been abusive. Id. at 1122-1125. See also United States v. Twenty-Two Thousand, Two Hundred Eighty-Seven Dollars ($22,287.00), United States Currency, 709 F.2d 442, 448-450 (6th Cir 1983) (warrant allowed for daytime service but was served at night; court discussed Burke and Searp and found no need for suppression). The Eight Circuit in United States v. Schoenheit, 856 F.2d 74, 76 (8th Cir. 1988), has followed suit. In Schoenheit, the court adopted the rationale in Burke and Searp and held that non-compliance with Rule 41 requirements on night search do not require automatic exclusion of evidence. Id. at 77 (distinguishing between procedural and substantive requirements). Rather, the court in Schoenheit asked whether there was a reasonable basis for the night search, whether there was evidence of intentional or deliberate disregard of Rule 41 requirements, and whether the search at night would have been authorized. Id.

      The Court has found no First Circuit precedent directly on point. But the cases discussed below suggest that the solution in the First Circuit would be that which was adopted in Burke and Searp. For example, in the case of United States v. Pryor, 652 F.Supp. 1353, 1364 (D.Me. 1987),

the District Court in Maine held that, even though the affidavit in that case did not contain sufficient facts to justify a night search and the night search was thus conducted in violation of Rule 41, suppression was not the appropriate remedy. Id. The court in Pryor discussed and adopted the rationale in Searp. Id. at 1365. And held that, because there was no evidence of bad faith or intentional misconduct, the record contained evidence that justified a nighttime search, the warrant was supported by probable cause, and there was no evidence of prejudice due to the night search, the search "was not unreasonable in the constitutional sense". Id. at 1366; see also United States v. Miller, 442 F.Supp. 742, 756-757 (D.Me. 1977); United States v. Kessinger, 504 F.Supp. 494, 499-500 (D.Mass. 1980).

Importantly, there are two opinions of the First Circuit that provide support for the conclusion that the First Circuit would follow the lead in Burke and Searp, as it pertains to violations of the rule on nighttime execution of a warrant. In United States v. Bonner, 808 F.2d 864, 868–69 (1st Cir. 1986), the First Circuit considered whether the fact that the search warrant was not in the agents' physical possession at the time of the search warranted suppression. The First Circuit rejected suppression citing Burke and expressing that "[v]iolations of Rule 41(d) are essentially ministerial in nature and a motion to suppress should be granted only when the defendant demonstrates legal prejudice [...]". Id. And that prejudice requires a showing that the defendant was subjected to a search that might not have otherwise occurred or would not have been so abrasive if Rule 41 would have been followed. Id. (citations omitted). In United States v. Burgos-Montes, 786 F.3d 92, 108–09 (1st Cir. 2015), the First Circuit again cited Burke to find that violations to the provisions of Rule 41 which pertain to the date in which the warrant was to be executed and the identity of the judge to whom the warrant should be returned were ministerial violations of the rule and did not require suppression. Id. The First Circuit expressed that "[t]he exclusionary rule should be limited to those situations where its remedial objectives are best served, i.e., to deter illegal police conduct, not mistakes by judges and magistrates." Id. at 109 (citations omitted). And therefore, that absent a showing of prejudice (that the person was subjected to a search that might not have occurred or that the search would not have been so abrasive) there is no basis for suppression. Id.

The First Circuit's analysis in United States v. McCarty, 475 F.3d 39, 44 (1st Cir. 2007) provides additional support for the conclusion that violations to Rule 41's requirement for the

approval of a night search would not automatically result in suppression. In McCarty, the First Circuit considered whether a search that was authorized to be conducted during the day but continued through the night was unreasonable. The First Circuit held that the search was not unreasonable *per se* and that the court had to assess the totality of the circumstances to gage reasonableness. Id. The First Circuit expressed that a court must assess the totality of the circumstances, including "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. at 44 (holding that search was not unreasonable); see also United States v. Young, 877 F.2d 1099, 1104-1105 (1st Cir. 1989).

  Upon consideration of the cases discussed above and the circumstances surrounding the search here, if there was a violation to the Rule 41(e) good cause requirement for a night search, such a violation did not make the search unreasonable. Atiles-Cruz sought permission to conduct the search at night. Government Exhibit 1-A. The affidavit includes sufficient facts to establish probable cause that a stolen vehicle or vehicle parts would be found in the property. Id. Colón Burgos testified that it was necessary to conduct the search at night because the evidence consisted of stolen motor vehicles or vehicles parts which could be removed. TR 212 ¶¶ 20-25, TR 213 ¶¶ 1-3. The judge did not expressly limit the search to daytime; did not forbid night search and she authorized the warrant at 9:55 p.m. Government Exhibit 2-A. There is no indication whatsoever that the judge would not have approved night execution. There is also no indication that law enforcement intentionally or deliberately disregarded the requirements for a night search; they sought permission to search at night, permission was not expressly denied, the judge placed her initials twice in the affidavit, the judge also referenced the affidavit in the warrant, and the warrant was authorized at night. There was also testimony from Atiles-Cruz and Colón-Burgos that they believed the night search to have been authorized. TR 64 at ¶¶ 1-10, TR 212 ¶¶ 10-25.

  Other than the fact that the Defendant could have been asleep when law enforcement entered the property, there is no evidence of prejudice or that the search would have been less abrasive if done during the day. Even though it was established that roughly thirteen (13) agents entered the property to execute the search warrant, there is no evidence that there would have been less agents present if the search would have been conducted during the day. TR 79 ¶¶ 18-20. And, according to the testimony of Salas-Ramírez, only three (3) agents came to the carport to speak to

Defendant when he came out of the residence for a second time. TR 83 ¶¶ 3-25, TR 96 ¶¶ 17-19. There is also no indication that the Defendant would not have signed the consent form to search the house if the search had been performed during the day. Even if the Defendant was asleep when agents first entered the property, the search of the house did not occur until after he signed the consent form. And the signature of the consent form was not done until at least ten (10) minutes after the initial entry of law enforcement to the property. During that time, the Defendant had a chance to enter his house and weigh his options prior to coming out of the residence for a second time. Any violation to the rule in this case was *de minimis* and does not warrant application of the exclusionary rule. Compare Jones v. United States, 357 U.S. 493, 496 (1958) (Government conceded that by the time petitioner's house was searched the daytime search warrant had expired); Yanez-Marquez v. Lynch, 789 F.3d 434, 464–69 (4th Cir. 2015)(magistrate judge crossed out night search and explicitly rejected the option that would have allowed the search to occur at night); U. S. ex rel. Boyance v. Myers, 398 F.2d 896, 899 (3d Cir. 1968) (law enforcement requested permission to conduct night search and magistrate specified that search should be during the day); Jones v. Kirchner, 835 F.3d 74, 85 (D.C. Cir. 2016) (magistrate affirmatively stroke the language that allowed for night execution); United States v. Merritt, 293 F.2d 742, 744 (3d Cir. 1961) (warrant specifically provided for execution during daytime).

**5. Defendant's consent to search the house was voluntary.**

A search without prior approval by a judge is *per se* unreasonable. United States v. Bernardy-Laboy, 2021 WL 1233470 *3 (D.P.R.). A warrantless search may be valid if the defendant gives voluntary consent. Id. But such an exception is to be narrowly construed. Id. The Government bears the burden of proving by a preponderance of the evidence that a defendant's consent to search was freely and voluntarily granted. United States v. Vanvliet, 542 F.3d 259, 264 (1st Cir. 2008) (citation omitted). A consent is voluntary if it is free and unconstrained. United States v. García-Sanjurjo, 2021 WL 4839905 at *6 (D.P.R.) (citation omitted). It is not voluntary if "granted only in submission to a claim of lawful authority." Id. (citation omitted); Florida v. Royer, 460 U.S. 491, 497 (1983) (citations omitted). Voluntariness is a question of fact. United States v. Vanvliet, 542 F.3d at 264 (citation omitted). The Court must assess the totality of the circumstances. Id. (citation omitted); Bernardy-Laboy, 2021 WL 1233470 *3. Various factors may be considered in assessing voluntariness for consent to search. These include the consenting

party's age, education, experience, and intelligence, the consenting party's knowledge of the right to refuse consent, the consenting party's possibly vulnerable subjective state, and evidence of inherent coercive tactics, either in police questioning or in the environment in which the questioning took place. United States v. Twomey, 884 F.2d 46, 51 (1st Cir. 1989) (quotations and citations omitted); United States v. Bey, 825 F.3d 75, 80 (1st Cir. 2016); García-Sanjurjo, 2021 WL 4839905 at *6 (citation omitted). Courts also consider, when applicable, whether law enforcement incurred in fraud, deceit, trickery or misrepresentations in obtaining a consent. Bernardy-Laboy, 2021 WL 1233470 *3.

      Defendant submitted a Sworn Statement under Penalty of Perjury asserting that the officers were intimidating, aggressive, had guns and screamed on the day of his arrest. Docket No. 52-1. Defendant also asserted that he was under custody when his consent to search the house was requested, that he refused consent, and that he was told that the house would be searched regardless of his consent. Id. Defendant further asserted that, when he signed the consent, he thought that it was for the search of a vehicle. Id. And that he did not know that the search warrant was limited to the vehicle. Id. The evidence submitted during the hearing contradicts Defendant's assertions. Under the totality of the circumstances, the consent to search was voluntary.

      The Government presented the testimony of law enforcement that, although roughly thirteen (13) agents entered the property to execute the search warrant, only three (3) agents came to the carport to speak to Defendant when he came out of the residence for a second time. TR 83 ¶¶ 3-25, TR 96 ¶¶ 17-19; see also Defendant Exhibit K. Defendant was informed of the search warrant, which he read and acknowledged by placing his initials, and he was then advised of his Miranda rights. The Defendant was then asked for consent to search the house and was provided with the consent form. The Defendant had questions about the consent form but was told that, if he did not consent, a warrant for the home would be forthcoming. The consent form described the residence that would be searched. Defendant signed the consent form after he had read the search warrant, after he had signed the Miranda form waiving his rights, and after the officer had written the description of the property in the form. TR 88 ¶¶ 3-16, TR 89 ¶¶ 4-17, TR 91 ¶¶ 9-20. See Government Exhibit 6 (Defendant reading the consent form and underneath the warrant with Defendant's initials); Government Exhibit 7 (Defendant placing his name in the consent form and underneath the signed Miranda form); Government Exhibit 9 (Defendant signing the Miranda form

and underneath the blank consent form).[3] The testimonial evidence established that the Defendant read all the documents presented to him, appeared to have understood the documents, and did not appear to be confused. Although he was given the warnings under Miranda, he did not have any restraints and no weapons were drawn at the time the consent was sought. The Government presented several photographs of the Defendant in which he appears to be reading the documents presented to him, he was not in handcuffs or otherwise restrained[4], and he appears to be signing the consent form without any observable evidence of force.

There is simply no evidence from which the Court can infer coercion. Although the consent was sought at night, the mere fact that three (3) agents approached to speak to the Defendant and to seek consent does not amount to coercion. See United States v. Bey, 825 F.3d at 81. Furthermore, the fact that Defendant was advised of his Miranda rights and was under custody does not negate the voluntariness of his consent. United State v. Jones, 523 F.3d 31, 37-38 (1st Cir. 2008); United States v. Watson, 423 U.S. 411, 424-425 (1976). The Government presented testimony that Defendant read and appeared to understand the consent form. And Defendant is not a newcomer to the law, which means that he had experience with law enforcement to counter any assertion of nervousness or confusion. United States v. Barnett, 989 F.2d 546, 556 (1st Cir. 1993). There is also no evidence of overt threats or pressures; guns were not drawn at the time consent was sought and granted. Having been told that failure to consent would result in the issuance of a warrant in and of itself is insufficient to establish coercion. United States v. Twomey, 884 F.2d at 51-52.

---

[3] The time in the Miranda form was noted as 12:30 a.m. (Government Exhibit 10-A) and the time in the consent form was noted as 12:20 a.m. (Government Exhibit 5-A). During the hearing, Salas-Ramírez explained that the Miranda rights were read prior to signing the consent form and that the inconsistency in the times in each form was because the Defendant wrote the time in the Miranda form, and he wrote the time in the consent form. TR 126 ¶¶ 2-17.

[4] The defense argued that the photographs show marks on Defendant's wrist and that the Defendant was handcuffed by police that night. However, the testimony of Salas-Ramírez was that the Defendant was not in handcuffs or restrained when consent was sought. And this is corroborated by the photographs presented by the Government. Without evidence to establish the contrary, the Court must conclude that, **at the time in which consent was granted,** the Defendant was not in handcuffs.

### IV.    Conclusion

The search of Defendant's property at night was not unreasonable and did not violate the Fourth Amendment. Under the totality of circumstances, Defendant's consent to the search of his house was voluntary. The Court recommends that Defendant's motion to suppress be **DENIED**.

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed within fourteen (14) days of its receipt. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to review by the District Judge and of appellate review. Thomas v. Arn, 474 U.S. 140, 154-155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

In San Juan, Puerto Rico, this 9th day of March 2023.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge