## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

    **v.**

                                      **Criminal No. 19-104 (ADC)**

**OSVALDO PASTRANA ROMAN,**

    **Defendant.**

## OPINION AND ORDER[1]

Pending before the Court are Osvaldo Pastrana Román's ("defendant") objections, **ECF No. 119**, to the U.S. Magistrate Judge Giselle López-Soler's ("Magistrate Judge") Report and Recommendation ("R&R"), **ECF No. 117**.

## I.    Procedural background

On February 13, 2019, a grand jury returned a seven-count indictment charging defendant with possessing a firearm in furtherance of a drug trafficking crime in violation of 21 U.S.C. § 841(a)(1) et al.,  18 U.S.C. § 924(c)(1)(A)(Count One); possessing a machinegun in furtherance of a drug trafficking crime in violation of *id*., 18 U.S.C. § 924(c)(1)(A) (Count Two); possession of firearms and ammunition as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)(Count Three); possession of a machine gun in violation of 18 U.S.C. §§

---

[1] On February 7, 2024 defendant, pursuant to a plea agreement, enter a plea of guilty. In doing so, defendant waived any legal issues pending final determination. While the legal issues raised through the suppression motion are deemed waived, this Opinion and Order is filed to preserve a clear record and adopt the factual and legal determination within the Magistrate Judge's Report and Recommendation, **ECF NO 117**.

922(o) and 924(a)(2)(Count Four); possession with intent to distribute 100 grams or more of substances containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(Count Five), possession of substances containing a detectable amount of marijuana in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)(Count Six), and cocaine in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)(Count Seven). **ECF No. 13**.

Defendant moved to suppress evidence and statements obtained by law enforcement agents during the search of his "residential property," under several grounds. **ECF No. 44** at 1. To wit, defendant claims that the search warrant did "not state probable cause" and that it "[did] not suffice to enter or search the [residence]." *Id*. Alternatively, defendant argues that the consent he provided for the search of the residence was "not freely and voluntarily given." *Id*. The government opposed. **ECF No. 49**.

Without any clear explanation for the delay, ten months later, defendant (through counsel) filed "supplement[]" brief purportedly "seek[ing] to clarify legal issues that form the basis for… [the] original suppression motions and set forth additional grounds…". **ECF No. 65** at 1. Nonetheless, the government opposed. **ECF No. 70**. Defendant replied. **ECF No. 76**.

During a status conference held by then Magistrate Judge Camille Vélez-Rivé on August 9, 2022, Judge Vélez-Rivé held:

> the motion to suppress seeking suppression of the evidence seized in the
> vehicle does not meet the threshold under *Franks* [(*infra*)]… a hearing is
> necessary to entertain the motion to suppress as to the evidence seized in

the residence because there are disputed issues of fact considering defendant's statement under penalty of perjury. Accordingly, a suppression hearing will be set limited to the motion to suppress the evidence seized from the residence[.]

Minute Entry of August 9, 2022, **ECF No. 62**. It was not until the evidentiary hearing, four months after the status conference, that defendant challenged the order denying his request for a *Franks* hearing as to the evidence seized in defendant's purported vehicle. *See* **ECF No. 117** at 4.

After Judge Vélez-Rivé's confirmation as a US District Judge, the Court's referral was reassigned to Magistrate Giselle Judge López-Soler. **ECF Nos. 87**, **88**. The evidentiary hearing was ultimately held by the Magistrate Judge on December 8, 9, and 12 of 2022. During the hearing the Magistrate Judge heard testimony from government witnesses Agent Christopher Atiles-Cruz ("Atiles-Cruz") and Agent Isaac Salas-Ramírez ("Salas-Ramírez"), both from the Puerto Rico Police Department ("PRPD"). The defense called Federal Public Defender Investigator, Anthony Toro-Zambrana to authenticate some photographs he took of the road leading to the searched property several years after defendant's arrest. The defense also called PRPD Sergeant Pedro Colón-Burgos. The parties submitted post-hearing briefs. **ECF Nos. 115-116**.

A Report and Recommendation (R&R) ensued. **ECF No. 117**. After moving for an extension of time, defendant logged his objections to the R&R. **ECF Nos. 117, 119**.

## II.        Factual background[2]

On January 18, 2019, agent Atiles-Cruz received instructions to investigate a confidential tip of a stolen Kia and Hyundai vehicles and automobile parts hidden in a property located at El Juicio Sector in Bayamón. **ECF No. 117** at 1. On even date, Atiles-Cruz visited the site and conducted surveillance. He placed himself in a "strategic point" where he could see the entrance of the property and a residence.[3] Atiles-Cruz did not witness any "criminal activity" on January 18, 2019. *Id*. He returned to the property two days later on January 21, 2019, at about 4:30 p.m., he saw a Hyundai Accent enter the property. According to his observations, the license plate was missing, and the driver's side door seemed "forced." *Id*.

On January 21, 2019, at 9:55 p.m., Atiles-Cruz submitted a sworn statement to a state court judge in support of a search warrant application. Puerto Rico Municipal Judge Aida Meléndez-Juarbe took Atiles-Cruz's oath. The sworn statement was assigned affidavit number 1170. **ECF No. 104-1** at 6-8; Government Exhibit 1-A. Under oath, Atiles-Cruz gave a detailed account of his observations, the property's location, the residence, and the vehicle to be searched. *Id*. Accordingly, he requested a search warrant for stolen vehicles and stolen vehicle

---

[2] Defendant does not properly challenge these factual findings which are "drawn from the evidence, testimonial and documentary, received at the suppression hearing." **ECF No. 117** at 2. Instead, as explained further below, in his objections defendant simply picks and chooses portions of the testimonies to create a distorted narrative while omitting several other important facts that are key to a complete and accurate version of the facts in this case.

[3] This is the only portion of the testimony and evidence that defendant specifically challenges in his objections. However, as discussed herein, this challenge is meritless.

parts located in the property and requested authority to conduct the search during the day or night. *Id*.

Based on the sworn statement, at 9:55 p.m. on even date, the state judge issued the search warrant for the vehicle as requested **ECF No. 104-1** at 9-11; Government Exhibit 2-A. Atiles-Cruz's sworn statement and affidavit were initialed and signed by the state judge on January 21, 2019. Despite Atiles-Cruz's requests, the search warrant did not specify the time the search should be executed. *Id*.

Salas-Ramírez was one of the agents assigned to execute the search warrant. **ECF No. 107** at 78-80. The search took place a couple of minutes after midnight, in the early hours of January 22. The agents opened the gate of the property and headed in the direction of the residence. *Id*. On their way, they spotted the defendant coming out of the residence shirtless, wearing black pants and holding a firearm. Defendant went back inside the residence before the agents could get a word with him.[4] Standing outside of the house, the agents started calling on him to come out. But he did not come out of the residence until approximately 10 minutes later. He did not have a gun in his hands this time around. *Id*. Thus, the agents holstered their firearms. *Id*.

---

[4] Agent Salas-Ramírez (one of the agents that executed the search warrant) testified: "A… I was walking to the property just before reaching the property, an individual came out of the home and he didn't have a shirt, he had black pants and with a firearm… Once he noticed that we were the Police because we were in uniform… he saw that we were the police who were there with patrol cars, he went back into the house… we were in the area about ten minutes notifying him that we're the police, for him to come out, that we had a search warrant for the home. Q. For the home or for – A. No, that we had a search warrant against him, for him, for the place." **ECF No. 107** at 80-81.

The agents announced themselves and informed that they had a search warrant. Defendant let three agents enter the carport and asked to see the search warrant. **ECF No. 107** at 84. The agents handed a copy of the search warrant to defendant who placed his initials in the document. *Id*., at 86, 87; Government Exhibits 2-4. Defendant was informed of his rights under *Miranda* and was handed a form with his rights, which he read and signed. *Id*., at 92, 97.

Based on their observations that night, the agents also asked defendant if he had a weapons permit. **ECF No. 107** at 132. Defendant said he did not, which prompted the agents to ask for consent to search the home and hand defendant a search consent form. *Id*. Defendant wrote his name on the form, which was then filled out by the agent before the defendant signed it. *Id*., at 88, 89, 91; Government's Exhibit 5-A, 6-7. The agents answered defendant's questions about the documents and the search. *Id*., at 98-99. Among their answers, the agents informed him that he was free to withhold consent in which case warrant for the home would be forthcoming. *Id*., at 100. According to the uncontested testimony, defendant read all the documents presented to him, although nervous, he did not appear to be confused; he appeared to understand the documents; was not in handcuffs; and did not have any restraints when presented with the documents. *Id*., at 99, 107, 119, 120, 124.[5]

## III.    Legal standard

---

[5] Although agent Salas-Ramírez admitted that defendant was no completely free to leave when he was presented with the consent form, he testified that there were no weapons unholstered and that no one raised their voice in the process of obtaining consent. **ECF No. 107** at 99.

Magistrate judges are granted authority to make recommendations on pretrial matters dispositive of a claim or defense, while the ultimate resolution of dispositive motions remains at the discretion of the presiding judge. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a), (b)(1); *accord* L. Civ. R. 72(a)(7)-(9). Any party adversely affected by the recommendation issued may file written objections within fourteen (14) days of being served with the report and recommendation. Fed. R. Civ. P. 72(b). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F. Supp. 2d 189, 191–92 (D.P.R. 2005) (citing *United States v. Raddatz,* 447 U.S. 667, 673 (1980)). "The district court need not consider frivolous, conclusive, or general objections." *Rivera-García v. United States,* Civ. No. 06–1004 (PG), 2008 WL 3287236, *1 (D.P.R. Aug. 7, 2008) (citing *Battle v. U.S. Parole Comm'n,* 834 F.2d 419 (5th Cir. 1987)). However, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate-judge." 28 U.S.C. § 636(b)(1); *see also Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir. 1985); *Álamo Rodríguez v. Pfizer Pharma., Inc.,* 286 F. Supp. 2d 144, 146 (D.P.R. 2003). The court may accept those parts of the report and recommendation to which the party does not object. *See Hernández-Mejías v. General Elec.,* 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (citing *Lacedra v. Donald W. Wyatt Detention Facility,* 334 F. Supp. 2d 114, 125-26 (D.R.I. 2004)).

IV.   **Discussion**[6]

Notably, most of the arguments included in defendant's objections were raised before the Magistrate Judge. *See United States v. Morales-Castro*, 947 F. Supp. 2d 166 (D.P.R. 2013) "[T]he district court should be spared the chore of traversing ground already plowed by the Magistrate [Judge]." *Id.*, at 170-71 (citing *González-Ramos v. Empresas Berríos, Inc.*, 360 F.Supp.2d 373, 376 (D.P.R. 2005)); *see also Pabón-Mandrell v. United States*, 91 F. Supp. 3d 198, 201 (D.P.R. 2015) (*de novo* review unwarranted where objections are repetitive of the arguments already raised before the magistrate judge); see also *Cruz-Berríos v. Borrero*, CV 14-1232 (ADC), 2019 WL 4780776, at *3 (D.P.R. Sept. 30, 2019), *amended in part*, CV 14-1232 (ADC), 2020 WL 12814753 (D.P.R. Mar. 30, 2020). Regardless of the standard, defendant's objections are unavailing.

A.   *Franks* **hearing denial**

Defendant's first objection challenges the Magistrate Judge's conclusion that a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) ("*Franks*") was not necessary. **ECF No. 119** at 3-4. Specifically, he challenges the agent's capacity to observe his residence during surveillance and thus the veracity of his under-oath representations while procuring the Puerto Rico search

---

[6] Absent a proper objection, the Court "needs only satisfy itself that there is no plain error on the face of the record" in order to adopt the magistrate judge's findings. *López-Mulero v. Vélez-Colón*, 490 F. Supp. 2d 214, 217-218 (D.P.R. 2007). Because the Court may accept the unobjected parts of the R&R, *id.*, this Court's analysis will track defendant's objections. The unobjected portions of the R&R are adopted herein.

warrant. *Id*., at 3. Likewise, he questions the agent's accuracy in the description of the property given the fact that the agent did not enter the property during his surveillance. Moreover, claiming that a "picture is worth a thousand words," *id*., at 4, defendant would have the Court reverse the Magistrate Judge's findings by looking at a photograph (specifically, Defendant's Exhibit J) without more. *Id*., at 3-4.[7] Finally, defendant argues that the agent did not attest to any illegal activity when he petitioned the state court judge for a search warrant. Thus, in defendant's view, there "was no probable cause to support the issuance of a warrant for stolen cars or parts." *Id*., at 4. The Court disagrees.

First of all, as discussed before, then Magistrate Judge Camille Vélez-Rivé denied defendant's request for a *Franks* hearing and limited the scope of the evidentiary hearing accordingly. Defendant did not object the ruling. His late objection to this decision, regardless, is meritless.

Magistrate Judge López-Soler recommends denying defendant's request for persuasive reasons. **ECF No. 117**. At the evidentiary hearing, the evidence and the testimonies showed that Atiles-Cruz was assigned to investigate a confidential complaint regarding stolen motor vehicles or parts hidden in defendant's property. He conducted surveillance from a "strategic

---

[7] Defendant also made a general reference to Defendant's Exhibits J1-J20. However, he included no discussion as to these exhibits either. The Court took it upon itself to go beyond the scope of the objections to examine the transcripts in connection with Defendant's Exhibits J1-J20. Surprisingly, other than asking "do you see it?" the defense made no question whatsoever concerning the content of these photographs to the witness they used to introduce them into evidence. *See* **ECF No. 108** at 10-13. Thus, the record is as barren as defendant's objections.

point" from where he could see the entrance of the property and the residence. **ECF No. 107** at 11. Atiles-Cruz saw a Hyundai Accent without a Puerto Rico license plate and a "forced door"[8] enter the property consistent with the confidential information received. Based on his observations and sworn statements, a state court judge issued the search warrant.

Defendant points to nothing in the record that would contradict "Atiles-Cruz's testimony that he had visibility of the property on the two days that he performed the surveillance" or that would otherwise move the Court to "disregard Atiles-Cruz's observation of what appeared to be a stolen vehicle entering the property on the second day of surveillance." **ECF No. 117** at 5. And "even assuming… that Atiles-Cruz's surveillance of the property and its corroboration was deficient, [d]efendant did not offer any evidence… to conclude that Atiles-Cruz had serious doubts as to the truth of his statements." *Id.*[9]

Defendant points to no evidence or testimony to hold otherwise. Defendant only relies on photographs (taken more than two years after the search warrant issued) with no accompanying explanation of what they depict. But even then, the photographs do nothing to tilt the scale in his favor. Defendant did not bother to explain how the photographs contradict either the testimony of Atiles-Cruz or the Magistrate Judge's findings. To be sure, the

---

[8] **ECF No. 117** at 2.

[9] During the proceedings before the Magistrate Judge, defendant had raised an issue with two "white tents" and other cars which were omitted in the search warrant application. The Magistrate Judge addressed that argument and denied it. **ECF No. 117** at 5 ("the inclusion of details pertaining to additional cars in the property could have likely bolstered the finding of probable cause in this case."). Defendant raised no specific objection in that regard.

photographs (one of them embedded in defendant's objections at **ECF No. 119** at 3) only depict the beginning of a rather wide unpaved road.[10] The Court cannot decipher where the road leads or ends. More importantly, there is absolutely nothing in the photograph or in defendant's objections that would move the Court to conclude that a person traveling through or near the road could not, at some point or from a certain angle, see the property as Atiles-Cruz said he did. **ECF No. 119; ECF No. 107** at 11.

Thus, defendant has failed to make a "substantial" showing that Atiles-Cruz made "(1) a false statement, [that] (2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable cause." *U.S. v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)(quoting *Franks*, 438 U.S. at 155–56). Not to mention that, even if defendant cleared *Franks*' first hurdles, he failed to address whether the affidavit lacked any other alternative statement sufficient to support a finding of probable cause. *Franks*, 438 U.S. at 172 ("[I}f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.") For these reasons, defendant's objections fail.

---

[10] There seems to be a formal construction of a ditch on both edges of the roads.

B.      *Jencks* **and Fed. R. Crim. P. 26.2**

Defendant also questions the Magistrate Judge's denial of his request to strike Atiles-Cruz's testimony due to alleged *Jenks* violations. To wit, during the evidentiary hearing, the defense asked for notes taken by witness Atiles-Cruz during the surveillance that resulted in the issuance of the search warrant and defendant's arrest. The Magistrate Judge granted Atiles-Cruz time to search for the notes. However, Atiles-Cruz explained that he could not find his notes. **ECF No. 117** at 5. He further explained to the Magistrate Judge that "all that was contained in the notes was ultimately included in the affidavit submitted in support of the search warrant." **ECF No. 117** at 5; **ECF Nos. 107**, **109** at 12-13at 32, **104-1** at 6.

Defendant claims the decision not to strike Atiles-Cruz's testimony was in error based on his interpretation of the Jencks Act, 18 U.S.C. § 3500, and Fed. R. Crim. P. 26.2. **ECF No. 119** at 5. Moreover, defendant objects the Magistrate Judge's "assumption" (in defendant's words) that he "would have a hard time proving that [the]… notes were in the [government's] possession…." *Id*. Ultimately, defendant contends the Magistrate Judge's prejudice analysis was flawed and that the testimony should be stricken considering the fact that, according to him, "there are significant credibility concerns as to whether Atiles[-Cruz] could have seen the things he said he saw… given the photographic evidence…". *Id*., at 6-7. These arguments are unavailing.

*Jencks* generally requires that the government provide, upon request, statements made by a trial witness relating to the witness' trial testimony. *U.S. v. Schneiderhan*, 404 F.3d 73, 79 (1st Cir. 2005). In order to prevail in a *Jencks* challenge, however, "a demonstration of prejudice is necessary." *Id*. Fed. R. Crim. P. 26.2's "purpose was to place in the criminal rules the substance of the Jencks Act[.]" *United States v. Rentas-Félix*, 235 F. Supp. 3d 366, 373 (D.P.R. 2017)(citing Fed. R. Crim. P. 26.2 advisory committee note (1979)). In general terms, the rule provides for the Court, on motion of a party after direct examination, to order the production of any statement of the witness that is in their possession and that relates to the subject matter of the witness' testimony be produced. Fed. R. Crim. P. 26.2(a).

Although defendant did not raise an objection on this particular topic, the Court finds it necessary to add that "[w]here a defendant requests discovery of potential *Jencks* material, [the First Circuit] requires… an independent investigation of any such materials and [a determination of] whether these materials are discoverable under the Jencks Act." *United States v. González-Meléndez*, 570 F.3d 1, 3 (1st Cir. 2009); *see also United States v. Maldonado-Peña*, 4 F.4th 1, 27 (1st Cir. 2021).

The Magistrate Judge "did just that: she undertook the required independent investigation when she probed [the witness'] recollection and understanding" of the circumstances surrounding the notes and their whereabouts. *United States v. González-Meléndez*, 570 F.3d at 3 (internal quotation marks omitted). The Magistrate Judge provided

time for the witness to search for his notes and still, days later he could not find them. During

this probe, Atiles-Cruz testified that the content of the field notes were incorporated into the

four-page affidavit[11] accompanying the search warrant application. **ECF No. 117** at 5.

Defendant does not claim that the government failed to produce such documents, nor does he

raise any objection in connection with Atiles-Cruz's search warrant application papers.

Moreover, there is nothing in the record suggesting any contradictions between Atiles-Cruz's

testimony and the search warrant documents[12] nor did defendant raise an objection in that

regard.

The probe-issue aside, the Magistrate Judge correctly held that defendant was not

prejudiced. Assuming that defendant met all other *Jencks* criteria, the Magistrate Judge

nonetheless determined that defendant did not suffer *Jencks* prejudice. The Magistrate Judge

credited Atiles-Cruz's testimony, including the part where he explained that the contents of

the notes were "incorporated into the affidavit submitted in support of the search warrant."

**ECF No 117** at 7. Because defendant "was able to cross examine Atiles-Cruz as to all

information contained in the affidavit[,]" he was not prejudiced even if the field notes were

undisclosed *Jencks* material which in spite of the witness's effort could not be located. *Id*.

Again, defendant's sole challenge to this conclusion is his claim that Atiles-Cruz was not

---

[11] Puerto Rico Court of First Instance Municipal Judge, Honorable Aida Meléndez-Juarbe, took Atiles-Cruz's oath, which was assigned affidavit number 1170. **ECF No. 104** at 8.

[12] As discussed before, there is no contradiction between Atiles-Cruz's testimony and the photographs highlighted by the defense.

credible due to inconsistencies between his testimony of the surveillance and the defense's photographs (taken two years after the events.)[13] However, the Magistrate Judge found otherwise. And this Court "need not hear the live testimony of a witness in order to accept" the credibility determinations of a magistrate judge. *United States v. Hernández–Rodríguez*, 443 F.3d 138, 147–148 (1st Cir. 2006)(quoting *U.S. v. Guzmán-Batista*, 948 F. Supp. 2d 194, 198 (D.P.R. 2013)).

After an independent review of the record, this Court, too, finds that defendant has failed to identify any inconsistencies in the evidence or testimony that rise to the level of *Jencks* prejudice. "In order to succeed on a claimed violation of the Jencks Act, defendants must demonstrate that they have been prejudiced by the failure to disclose." *U.S. v. Rosario-Peralta*, 175 F.3d 48, 53 (D.P.R. 1999). Even if the surveillance notes constituted undisclosed *Jencks* material, defendant has not been able to demonstrate any degree of prejudice. As stated before, the content of the notes was poured into the search warrant application papers. Such information was available to defendant and was made available for the defense's use during the cross examination of the witness.

Even assuming for sake of argument that defendant had made a minimal showing of some evidence of inconsistencies (he did not) or "concerns as to whether Atiles[-Cruz] could have seen the things he said he saw" (**ECF No. 119** at 7), "the light caliber of the impeachment

---

[13] Argument discussed and denied above.

ammunition furnished by the [surveillance notes] would not have dented the well buttressed evidence of the government." *U.S. v. Izzi*, 613 F.2d 1205, 1213 (1st Cir. 1980). Indeed, Atiles-Cruz stated consistently throughout his testimony that the surveillance notes only contained information regarding the physical location of the place of surveillance. When asked by the Magistrate Judge about the content of the notes, Atiles-Cruz explained that "in the notes, what I have is just the location[]" of the property. **ECF No. 107** at 32. Several days later, after confirming that he could not find his notes, Atiles-Cruz was recalled to the stand to explain yet again the content of the notes. *See* **ECF No. 109** at 7-13. He once again stated that the notes contained "[b]asically the address of the location and the location of those grounds as such." **ECF No. 109** at 12-13. The defense did not follow up with any further question in this regard. The last question by the parties was: "[d]oes your sworn statement contain the same information that was in your notes?... A. Correct." *Id*., at 13. The defense had no further questions and the witness was excused. *Id*. This testimony is corroborated by the evidence because his sworn statement does contain a description of the "location" and the "address." *See* **ECF No. 104-1** at 6. Thus, the surveillance notes would have had a "light caliber" for impeachment purposes. *U.S. v. Izzi*, 613 F.2d at 1213.

Accordingly, this objection is also overruled.

### C.    The Midnight search

Based on Atiles-Cruz's observations during his January 21, 2019 surveillance of the property, the state court judge issued the search warrant pursuant to the Puerto Rico Rules of Criminal Procedure. **ECF No. 104** at 6-8. The warrant was issued at 9:55 p.m. Although the application papers submitted by Atiles-Cruz requested that the search warrant allow for both day and nighttime execution (the Puerto Rico Rules of Criminal Procedure do not include a definition of "daytime"), the search warrant does not indicate either. *Id*.

Defendant raises a couple of challenges calling into question the lawfulness of the search and moves for the exclusion of the statements and evidence seized thereafter all based on his claim that the warrant was faulty. Specifically, defendant challenges the search because it took place at 12:22 a.m. of January 22, 2019 and quarrels with the Magistrate Judge's ultimate conclusion that the search was "reasonable" under the Fourth Amendment. Defendant also disagrees with the Magistrate Judge's alternative conclusion that the search warrant nonetheless incorporated Atiles-Cruz's affidavit by reference and, thus, could be interpreted to allow execution during the day or night as requested. He also claims that automatic suppression should apply under Fed. R. Crim. P. 41 or, in the alternative, that a prejudicial error warrants suppression in this case. **ECF No. 119** at 9-11. Defendant's arguments fail to carry the day.

        **(i)**      **Puerto Rico Law**

As discussed before, the warrant in this case was issued pursuant to Puerto Rico law and by a Puerto Rico judge. Examining it under Fed. R. Crim. P. 41's lens, as defendant does, necessarily raises some practical issues. Although similar in certain aspects, the Puerto Rico Rules of Criminal Procedure are not identical to their federal counterparts. Notably, the relevant Puerto Rico rule does not track Fed. R. Crim. P. 41's daytime definition. In fact, under Puerto Rico law, "daytime" is measured from sunrise to sunset. PR Laws Ann. Tit. 31 § 8.[14] Based on these practical considerations, if the state court judge while authorizing execution of the search warrant at 9:55 p.m. "command[ed] the officer to... execute the warrant during" Fed. R. Crim. P. 41's "daytime," the officer would have been authorized to conduct a search during Puerto Rico's "nighttime."

In addition, courts in Puerto Rico have found that a warrant is not invalid simply because it lacks indication of whether it must be executed during daytime or nighttime. *See, for example*, *Pueblo de Puerto Rico v. Tirado Ramos*, 2006 WL 4072713, KLCE0601354, *Resolution denying cert*. P.R. Court of Appeals, December 22, 2006. However, because defendant did not raise this issue in his objections, and because the parties did not submit a certified translation

---

[14] To add some context, the undersigned notes that a sunset after 8:00 p.m. in Puerto Rico would most likely be a sign of the end of times. Sunset may vary by one or two hours depending on whether summer or winter time, but reportedly, it has never been after 8:00 p.m.

of this case or any other case holding the same, the Court need not tarry on discussions of state law.

### (ii)    Fourth Amendment

"[T]he Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in federal prosecution." *United States v. Syphers*, 426 F.3d 461, 468 (1st Cir. 2005)(quoting *United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994)). This Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly, it requires "probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized" for a "Warrant" to issue. *Id*.

The Constitution does not require that the search warrant include a limitation as to the time it must be executed. Instead, "[a] warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the commission element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called nexus element." *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015)(internal quotation marks omitted). In making this *sine qua non* probable cause finding, the "issuing magistrate ordinarily considers… facts set forth in supporting affidavits accompanying the warrant application." *United States v. Zayas-Díaz*, 95 F.3d 105, 111 (1st Cir. 1996).

Here, defendant does not challenge either the probable cause or the nexus elements. Neither are his objections aimed at any constitutional aspect of the warrant or the search conducted thereunder. His objection is grounded on a Fed. R. Crim. P. 41 requirement: the "express[] authoriz[ation]" to execute the warrant during nighttime (after 10:00 p.m.).[15]

The main problem with defendant's arguments is that it overlooks the fact that the test to determine whether the fruits of the search ought to be excluded begins and ends with the Fourth Amendment. To boot, "[i]f … the warrant was issued under authority of state law then *every* requirement of Rule 41 *is not* a *sine qua non* to federal court use of the fruits of a search predicated on the warrant[.]" *United States v. Mitro*, 880 F.2d 1480, 1485 (1st Cir. 1989). In fact, aside from the procedural aspects of the issuance of the warrant, the products of the search "are lawfully obtained for federal prosecutorial purposes if that warrant satisfies constitutional requirements and does not contravene any Rule-embodied policy designed to protect the integrity of the federal courts or to govern the conduct of federal officers." *Id.*

Although not considered by defendant, at least one sister court in this Circuit has determined that some of Fed. R. Crim. P 41's requirements fall outside Fourth Amendment and Rule-embodied policy. The U.S. District Court for the Circuit of Maine held that a state warrant's "failure to specify daytime execution or to state good cause for nighttime execution, Rule 41(e)(2)(C)" if one of such outlier requirements which omission does not carry exclusion.

---

[15] Fed. R. Crim. P. 4(a)(2)(B) defines daytime as the hours between 6:00 a.m. and 10:00 p.m.

*U.S. v. Sayer*, 2012 WL 2180577, at *11 (D. Me. 2012). In reaching that determination, similar to this case, Judge Hornby noted that "defendant has not shown how any of those are policies integral to the integrity of the federal courts or the conduct of federal officers." *Id*.

Overlooking the above and without a constitutional theory as a foundation, defendant only attacks the Magistrate Judge's legal conclusions by distinguishing the cases cited in the R&R and offering (out-of-circuit) cases in support of his contentions.

### (iii)    Defendant's caselaw in support of his objections

Defendant cites a single line from *O'Rourke v. City of Norman*, 875 F.2d 1465, 1469 (10th Cir. 1989) in support of his objections. **ECF No. 119** at 8 ("To determine that a warrant limited to daytime execution authorizes the nighttime search of a home is to completely eviscerate the issuing magistrate's determination of reasonableness"). However, there are glaring differences between *O'Rourke* and the case at bar.

Contrary to *O'Rourke,* where law enforcement officers searched an occupied home, the search warrant in this case was for a Hyundai accent motor vehicle, not a home. Moreover, here, defendant noticed the agents before they reached the residence and met them outside. **ECF No. 107** at 79-81. Out of his own volition and without asking for permission, he went back inside the house and came out ten minutes later. *Id*. The record shows that as soon as he exited the house for the second time, he voluntarily opened the door to his home (at least his carport) to let the agents in and read the search warrant. **ECF No. 107** at 83. The agents did not search

the house until defendant read and signed the search warrant, a Miranda form, and a search consent form. *Id*., at 83-95. Therefore, this is not a case of an abrupt intrusion in an occupied home.

Circling back to *O'Rourke*, defendant failed to mention that before reaching the Fourth Amendment discussion, the *O'Rourke* court addressed whether a "bench warrant" that was "issued for contempt of court was a felony warrant under Oklahoma law." *Id*., at 1469. This question was important for the *O'Rourke* court because, "[i]f it were a felony warrant, nighttime execution would have been authorized under Oklahoma law, and constitutionally valid." *Id*. In this case, the state warrant was issued due to the commission of a felony. If this Court applied the reasoning (and law) applied in *O'Rourke*, defendant's objections would be nothing short of frivolous.

Defendant also cites without discussion *U. S. ex rel. Boyance v. Myers*, 398 F.2d 896, 897 (3rd Cir. 1968). However, *Myers* cuts against defendant. First of all, *Myers* did not create a bright line rule of automatic exclusion under Fourth Amendment. Instead, it reasoned that the "time of a police search of an occupied family home *may be a significant factor* in determining whether, in a Fourth Amendment sense, the search is unreasonable." *Id*., at 897(emphasis added). In reaching its determination, the Third Circuit also considered several factors as a "possible justification" for the nighttime execution of a "daytime" search warrant, including

"any reason for apprehension that the evidence within the house would be removed, hidden or destroyed before morning." *Id*., at 899.

Contrary to *Myers*'s underlying facts, there are several reasons to think that the evidence in this case (a working vehicle) could be "removed, hidden[,] or destroyed "before morning" as the *Myers* court warned. *Id*. In that same vein, the court noted that for many years, the Supreme Court has understood that "necessary difference exists between searching a store, dwelling house or other structure and searching a…wagon or automobile because a vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Collins v. Virginia*, 138 S.Ct. 1663, 1669 (2018)(*quoting Carroll v. United States*, 267 U.S. 132 (1925)).

More importantly for present purposes, unlike the case at bar, the warrant in *Myers* was "explicitly limited to daytime searches." *Id*., 898. Therefore, the Third Circuit reasoned it would be improper to assume that the state magistrate judge who authorized the warrant intended to authorize a nighttime search where the warrant stated "daytime." *Id*. (to "legalize[] [the] search at any hour of the day or night would be to disregard the magistrate's actual determination").[16] Thus, *Myers* supports the Magistrate Judge's recommendations, including her finding that the warrant could incorporate by reference the accompanying sworn statement. To that point, the *Myers* court emphasized that "[i]f the warrant ha[d] been

---

[16] Here, the state judge made no such "determination."

silent as to the authorized time of execution it might have presented a substantial problem of interpreting language." *Id*., at 899.

Furthermore, the Third Circuit mulled over what the law enforcement officer could "reasonably" think the warrant indicated. *Id*. Considering that the *Myers*'s warrant was procured at 1:00 a.m. by two officers while other officers continued the surveillance of the property, the Third Circuit concluded: "[i]n these circumstances the issuance of a warrant specifying daytime search cannot reasonably be taken to indicate that the magistrate determined that an immediate search before day was necessary or appropriate." *Id*. Given the fact that in this case the state judge issued the search warrant at 9:55 p.m. authorizing the search of a working vehicle without any "determination" as to the time of the day it could have been executed, it could have reasonably "be taken to indicate" that it allowed a nighttime search. *Id*.

Next in line is defendant's quote from *Yánez-Márquez v. Lynch*, 789 F.3d 434 (4th Cir. 2015), that "a daytime warrant does not authorize a nighttime search." *Id*., at 469. *See* **ECF No. 119** at 8. But, three pages earlier, the Fourth Circuit Court of Appeals stated the same rule in more flexible terms: the "existence of a daytime warrant *ordinarily* does not justify a nighttime search." *Id*., at 466 (citing *O'Rourke*, 875 F.2d at 1474)(emphasis added). This non-rigid formula is more in tune with the Fourth Circuit's opinion which recognizes several instances in which a "daytime" search warrant would not infringe Fourth Amendment rights if executed during

the shade of night. *See id*., at 466 ("That a nighttime search would be unconstitutional absent consent or exigent circumstances if it was conducted under color of a daytime warrant is not a novel concept.")

Importantly, after collecting cases from several circuits, the *Lynch* court synthetized that "[i]n reaching their determinations that the nighttime searches violated the Fourth Amendment, the Third and Tenth Circuits focused on the *scope of authority conveyed* by the *explicit terms* of the search warrants." *Id*., at 466 (emphasis added). Following that logic, it is imperative to note that unlike all the cases cited by defendant, the state judge did not limit the execution of the search warrant to daytime. *Lynch,* at 466 ("Because each warrant authorized a daytime search only, the warrant only could be executed during daytime hours.").

Moreover, although it ultimately steered away from a prejudice test, the Fourth Circuit took note of the fact that "sister circuits[17] have employed [a] [(prejudice)] standard in refusing to suppress evidence obtained during unauthorized nighttime searches." *Id*., at 468.

Ultimately, defendant's attack grounded on *Lynch* is unpersuasive considering *Lynch*'s obvious emphasis on the fact that the "magistrate judge specif[ied] that the search warrant was to be executed in the daytime, [] crossed out and explicitly rejected the alternative option that would have allowed the search to occur in the nighttime." *Id*., at 468; *see also id*., at 469

---

[17] Among them, this Court highlights the Second Circuit's Opinion in *United States v. Burke*, 517 F.2d 377 (2d Cir. 1975), a case that will be discussed extensively in the next section of this Opinion and Order.

("Because the magistrate judge explicitly rejected a nighttime search, the warrant's daytime restriction must be construed against the agents.") And yet again, the *Lynch* Court also admitted exceptions where suppression would not automatically apply to a nighttime execution of a daytime warrant, including "consent or exigent circumstances." *Id.*, at 469. Thus, the caselaw put forward by defendant fails to support his request for automatic suppression under Fourth Amendment.

The Court now turns to the Magistrate Judge's reasoning and conclusions.

### (iv)   Incorporating other documents by reference and the reasonableness of the search

The Magistrate Judge concluded that the search warrant incorporated by reference Atiles-Cruz's request for nighttime execution. The Magistrate Judge cited First Circuit cases in support of this conclusion. *See Rivera Rodríguez v. Beninato*, 469 F.3d 1, 5 (1st Cir. 2006); *United States v. Burgos-Montes*, 786 F.3d 92, 108 (1st Cir. 2015), **ECF No. 117** at 9. The Magistrate Judge further explained that the state judge annotated "Aff #1170," the number of the affidavit of Atiles-Cruz's sworn statement, above her signature in the issued search warrant. She also noted that the state judge placed her initials on the sworn statement and did not strike the officer's request for a night search nor expressly ordered the search be conducted during the day. Accordingly, the Magistrate Judge found that it was reasonable to determine that the warrant incorporated the sworn statement.

Defendant objects. He first takes issue with *Beninato,* calling it unsuitable because the warrant in that case included a "see attached affidavit" language and because of certains issues with burdens of proof in civil cases raised on that opinion. He also quotes a single line from *In re Application of Lafayette Academy, Inc.,* 610 F.2d 1 (1st Cir. 1979) to argue that a sworn statement cannot cure the "generality of a warrant." *Id.,* at 3. These arguments are meritless.

First, and as observed with the cases cited by defendant in support of other arguments, here, too, counsel for defendant pretends to sweep under the rug the substance of the cases in order to underscore the one line that supports his theory. Notably, contrary to his contentions, the warrant in *In Re Application of Lafayette Academy, Inc.,* 610 F.2d 1 (1st Cir. 1979) did not lack a Fed. R. Crim. P. 41 element, but information specifically required by Fourth Amendment. *See Id.,* at 3 ("the warrant does not describe the 'things to be seized' with the particularity required by the fourth amendment.").

Second, although the state judge in this case did not include *Beninato*'s "see attached affidavit" language, those words are not a *sine qua non*. The First Circuit has only required "suitable words of reference which incorporate the affidavit." *Rivera-Rodríguez v. Beninato*, 469 F.3d at 5 (quoting *United States v. Klein*, 565 F.2d 183, 186 n. 3 (1st Cir. 1977)). There, the state judge literally wrote the number of the affidavit on the warrant twice. In light of the totality of the circumstances present here, *Klein* seems like a more suitable "reference" point.

Third, the First Circuit has held that a state warrant that indicates "daytime" can be reasonably construed to allow a day search to continue though the night. *U.S. v. Young*, 877 F.2d 1099, 1104 (1st Cir. 1989). The language in *Young*'s warrant specified "[w]e therefore command you in the daytime to make an immediate search[…]". *Id.*, at 1104 (1st Cir. 1989). The First Circuit nonetheless held that "[t]he language of the somewhat ambiguous warrant permit[ed] [a] reading[]" that allowed the search to extend beyond "daytime." *Id*. Notably, the language in *Young* did not include any indication that it permitted a nighttime search even if it started during daytime. And, even if "ambiguous," the warrant and its execution was not unconstitutional regardless of whether the search extended beyond "daytime." The First Circuit "found no legal authority demanding that the warrant's terms in this respect be absolutely clear and unambiguous." *Id.*, at 1105. Thus, even if the terms concerning the time of execution of the warrant in this case are "ambiguous," it is not automatically invalid, and the search executed under the warrant is not unreasonable per se.

Moreover, the state judge in this case placed her initials in the sworn statement and signed the affidavit of Atiles-Cruz's statement. The Magistrate Judge, understandingly so, gave weight to that particular action. Contrary to defendant's unsupported proposition, there is no outright prohibition of looking at potential cross references to determine the sufficiency of a search warrant. *See Groh v. Ramírez*, 540 U.S. 551, 557–58 (2004)("We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most

Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.")(collecting cases)).

As shown above, the Magistrate Judge's conclusion is perfectly viable under the Fourth Amendment for four main reasons. First, because we are not dealing with a missing Fourth Amendment requirement. Second, because the state judge did not limit the execution of the search warrant to "daytime" or otherwise prohibited a "nighttime" search. Third, because the state judge used appropriate terms to reference the affidavit and placed her initials and signature on the sworn statement as well as the search warrant. Fourth, but not less important, because the search conducted pursuant to the warrant was reasonable in light of the totality of the circumstances, particularly when the evidence to be seized was a working automobile.

To be sure, and for good measure, the Court reiterates that the Magistrate Judge's logic reasoning (validating the cross-reference to the agent's affidavit) has not been rejected. *See Groh v. Ramírez*, 540 U.S. at 557–58 ("We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents.").

**(v)      Automatic suppression for Fed. R. Crim. P. 41 violations**

Defendant next moves for the Court to disregard the Magistrate Judge's conclusion that a Rule 41 violation does not automatically calls for suppression. **ECF No. 119** at 10. He claims, without a single reference to authority in support, that "suppression should apply" simply

because the warrant does not expressly indicate that the agents had authority to execute it at nighttime, which according to his arguments would be per se unreasonable. *Id*. Defendant, however, points to no on-point caselaw from this or any other circuit standing for that conclusion. Moreover, defendant does not address the distinctions between a Puerto Rico warrant *vis-a-vis* Fed. R. Crim. P. 41.

But more importantly, as noted before, defendant failed to develop a proper argument to conclude that the nighttime search was unreasonable under the Fourth Amendment, which is the applicable test here. *See U.S. v. McCarthy*, 475 F.3d 39, 43 (1st Cir. 2007)("nighttime searches are not per se unreasonable; rather, we apply a traditional reasonableness test to the search"). At the risk of being redundant, according to First Circuit precedent, "if the warrant is issued by a state court under state law then *every* requirement of Rule 41 is not a sine qua non to federal court use of the fruits of a search predicated on the warrant even though federal officials participated in its procuration or execution." *U.S. v. Krawiec*, 627 F.2d 577, 580 (1st Cir. 1980)(citing *United States v. Sellers*, 483 F.2d 37, (5th Cir. 1973)(emphasis added); *United States v. Mitro*, 880 F.2d at 1485; *United States v. Syphers*, 426 F.3d at 468 ("the Fourth Amendment, not federal rules or state law, governs the admissibility of evidence obtained by state officers but ultimately used in federal prosecution."). Thus, his proposition for automatic exclusion misses the mark.

Even if the Court disregarded binding precedent holding that the state warrant in this case need not comply with "every" requirement of a federal warrant (which is defendant's sole contention), defendant's arguments are still undeserving of the relief it seeks. As discussed before, the Court was able to find at least one case from this Circuit in which the validity of a search pursuant to a state warrant was upheld even when it failed to include the "daytime" or "nighttime" specifications required by Fed. R. Crim. P. 41. *See U.S. v. Sayer, supra.*[18] Moreover, courts in this District have held that even warrants that "undeniably fail to conform to the form prescribed by the rule [41] are not subject to automatic suppression." *U.S. v. Burgos Montes*, Crim. No. 06-009 (JAG), 2011 WL 1743420, at *3 (D.P.R. 2011). In that case, a sister District court concluded that "defects of form do not render the warrants substantially defective." *Id.*

Defendant argues automatic suppression ensues simply because of his contention of "egregious police conduct" in this case. **ECF No. 119** at 10-12. However, even if that was the appropriate test, he points to no evidence or testimony in support. Much like in the First Circuit's *McCarthy* opinion, "there is no evidence that [defendant] was roused from his sleep,

---

[18] Unlike the case at bar, in which defendant points to a miniscule violation, in *Sayer* the "noncompliance issues the defendant lists [were]: signature by a state judge rather than a federal magistrate judge, Rule 41(b)(4); failure to designate the magistrate judge to whom the warrant must be returned, Rule 41(e)(2)(C); failure to limit the Order's authorization to 45 days, Rule 41(e)(2)(C), instead allowing 60 days; failure to specify daytime execution or to state good cause for nighttime execution, Rule 41(e)(2)(C); failure by the executing officer to enter on the warrant the exact date and time of the tracking device installation, Rule 41(f)(2)(A); failure to return the warrant to the designated magistrate judge within 10 days after use of the tracking device ended, Rule 41(f)(2)(B); and failure of the executing officer to serve a copy of the warrant on the person tracked after the tracking period ended, Rule 41(f)(2)(C))." *Sayer*, at 12.

or that the search was particularly intrusive." *U.S. v. McCarthy*, 475 F.3d at 44. To the contrary, defendant spotted the agents before they knocked on his door, exited his house to meet them (with a gun in his hands no less), and went back inside untouched and unquestioned by the agents. Ten minutes later, a reasonable cooling period by any measure, he came out again without the gun and voluntarily talked to the agents. Clearly, "[defendant] was allowed a considerable degree of freedom during the search, which by all accounts was conducted in a very professional manner." *Id*.

Thus, defendant's unsupported notion that a state warrant's omission of a requirement of the Fed. R. Crim. P. triggers automatic suppression is wrong. The caselaw cited above (which is not contradicted by any of defendant's chosen authorities) states otherwise. Thus, the Court need not address defendant's arguments in this regard any further. Nonetheless, defendant's argument that he was prejudiced by the state warrant's omission is worth a closer look.

### (vi)     Prejudice under Fed. R. Crim. P. 41

Defendant disagrees with the Magistrate Judge on whether suppression under Fed. R. Crim. P. 41 requires a showing of prejudice. Defendant does concede, however, that the First Circuit has not ruled on this matter. **ECF Nos. 117** at 11; **119** at 10-11. Yet, he insists that even if automatic exclusion is not viable, his account of the events supports a finding of prejudice. **ECF No. 117** at 11-12.

Defendant first takes a swing at the caselaw cited by the Magistrate Judge in support of her finding that exclusion in this case would necessitate a showing of prejudice.[19] His arguments are unpersuasive.

Defendant first criticizes the Magistrate Judge for making reference to *U.S. v. Pryor*, 652 F.Supp. 1353, 1357 (D. Me. 1987) because in that case the warrant did authorize a nighttime search. **ECF No. 117** at 13. However, the relevance of *Pryor* to the discussion in the R&R does not hinge on what was included in the warrant, but rather in what was missing. That is, the "affidavit did not contain information sufficient to justify a nighttime search." *Id.*, at 1362; **ECF No 117** at 12. As correctly stated by the Magistrate Judge, the *Pryor* court held that because there was no evidence of bad faith or intentional misconduct, nor prejudice to defendant, the search supported by a finding of probable cause "was not unreasonable in the constitutional sense" *Pryor*, 652 F.Supp. at 1366.

Defendant also takes issue with references to *U.S. v. Bonner*, 808 F.2d 864, 865 (1st Cir. 1986) since it "deals with" a different violation, "failure to provide a copy of the search warrant to an individual before its execution[.]" **ECF No. 119** at 13. Although true, the fact of the matter is that the Magistrate Judge cited *Bonner* because in that case the First Circuit applied *United States v. Burke*, 517 F.2d 377 (2nd Cir. 1975) to hold that violations to Fed. R.

---

[19] Defendant included a comment against the Magistrate Judge's reliance on *U.S. v. McCarthy*, 475 F.3d 39, 43 (1st Cir. 2007). To avoid unnecessary repetitions, the Court refers the reader to the previous sections of this Opinion and Order where the Court discusses why *U.S. v. McCarthy* supports the Magistrate Judge's recommendations.

Crim. P. 41(d) are "ministerial in nature" and do not call for suppression absent prejudice. **ECF No. 117** at 12. In other words, the relevance of *Bonner* lies in its holding, not its factual underpinnings.

Defendant proposes nothing else aside from the lightweight criticisms discussed above. Because his legal challenges lack merit, defendant next tries to patch together a version of the facts to show "prejudice." A careful review of the record, however, tells a different story.

Defendant first raises an issue with the fact that the agents in this case did not seek clarification or an amended search warrant from the state judge. *Id.*, at 11. As the Court explained before, this argument leads nowhere because the state warrant was not insufficient for Fourth Amendment purposes. And neither did the search warrant in this case prohibit the agents from conducting the search at nighttime or provide only for daytime execution. Therefore, defendant's arguments under *U.S. v. Katoa*, 379 F.3d 1203 (10th Cir. 2004) are also unavailing. *Id.*, at 1204 (after "SWAT" team executed a "no-knock warrant by ramming" defendant's door, the detective reviewed the search warrant with the defendant and noticed "it still read day time service.")

Defendant next claims that the search constituted a "raid" in the most "abrasive scenario" because more than a dozen agents entered the property at midnight. *Id.*, at 12. Skipping over many other events that took place, defendant then claims that the agents

"entered [defendant]'s carport,[20] convinced him to sign consent paperwork, and entered his home." *Id*. In his objections, defendant's counsel argues that defendant was "roused from sleep, his attire suggested as much: he was shirtless[21] and in slippers." *Id*. Moreover, even though there is no evidence or testimony to that effect, counsel speculates as to what could have been different if the warrant was executed during daytime and concludes that it would have been "less frightening, less stressful, and less abrasive…". *Id*.

Ultimately, his unsupported version of events does not help his case. The undisputed evidence and testimony show a very different scenario than the one he portrays. Once again, the Court finds it necessary to allude the undisputed testimony (corroborated with photographs taken of defendant as he read, initialed, and signed the warrant and the search consent form) highlighted by the Magistrate Judge in the R&R:

> Other than the fact that the Defendant could have been asleep when law enforcement entered the property, there is no evidence of prejudice or that the search would have been less abrasive if done during the day. Even though it was established that roughly thirteen… agents entered the property… according to the testimony of Salas-Ramírez, only three (3) agents came to the carport to speak to Defendant when he came out of the residence for a second time…. There is also no indication that the Defendant would not have signed the consent form to search the house if the search had been performed during the day. Even if the Defendant was

---

[20] To be clear, what the uncontroverted testimony establishes is that defendant opened the gate of the carport for the agents. **ECF No. 107** at 83. There is no evidence that the agents asked him to open the carport gate.

[21] Defendant does not challenge the fact that once he saw the agents outside of his home, he went back inside the house for approximately 10 minutes. Aside from the fact that defendant did not testify, there is no logical reason to think that he had no time to put a shirt on. After all, it seems that the lack of a shirt and the use of slippers is what defendant relies on the most to support an allegation of prejudice in this case. See **ECF No. 119** at 14.

asleep when agents first entered the property, the search of the house did not occur until after he signed the consent form. And the signature of the consent form was not done until at least ten (10) minutes after the initial entry of law enforcement to the property. During that time, the Defendant had a chance to enter his house and weigh his options prior to coming out of the residence for a second time. Any violation to the rule in this case was de minimis and does not warrant application of the exclusionary rule.

**ECF No. 117** at 13-14.

Because defendant did not proffer any legal authority in support of his requests and because the evidence fails to support defendant's factual claim of prejudice resulting from the nighttime execution of the search warrant, his objections to that end are hereby overruled.

### D.    Defendant's consent to the search of his home

As mentioned before, once defendant exited his house for the second time, he gave his consent for the search of his home. Defendant objects the Magistrate Judge's "finding that [he] voluntarily consented to the police search of his home." **ECF No. 119** at 14.

#### (i)    Defendant's consent and the non-coercive circumstances leading up to it

"Longstanding precedent… carves out an exception to the warrant requirement for consensual searches" when consent is "validly obtained and voluntary." *Pagán-González v. Moreno*, 919 F.3d 582, 590 (1st Cir. 2019) (citation and internal quotation marks omitted). Consent is "a jealously and carefully drawn exception to the warrant requirement." *Id*. at 591 (citation and internal quotation marks omitted). "The government thus fittingly bears the burden to prove valid, voluntary consent…." *Id*. (citations omitted). Courts engage in a

"totality-of-the-circumstances review," "taking, into account, where appropriate any evidence that law enforcement officers' fraud, deceit, trickery or misrepresentations prompted defendant's acquiescence to the search." *Id*. (citations omitted).

In his first argument, defendant questions the validity of his consent due to the alleged "coercive circumstance" created by the presence of the Puerto Rico Police. **ECF No. 119** at 15. Defendants complains about the fact that there were "13 officers," "four police cars equipped with .40 caliber pistols, batons, tasers, and flashlights."[22] **ECF No. 119** at 15. Yet, as described several times over, this case does not present "coercive circumstances." Defendant noticed that the agents entered the property though the gate on the road and met them outside his home with a gun in his hands. He went back inside his home without resistance from the agents. Ten minutes later he came out again. The agents did not use any kind of force other than simply calling him out and announcing they had a search warrant.

Defendant also places a lot of emphasis on the fact that several agents had their weapons drawn. But his account of the facts misses context and perspective of the chain of events that transpired that day.[23] Agent Salas-Ramírez testified:

> A… the first time that he had come out with the firearm; that he had been
> seen that he had the firearm and went into the home, once he was coming

---

[22] Defendant did not testify, so the Court has no way of knowing what impact if any this "show of force," as he calls it, had on defendant. Neither can the Court make sense of how defendant could have known that the police vehicles were "equipped" with those items before he gave his consent to the search of his home.

[23] The defense's constant omission or misstatements of facts, evidence and testimony runs afoul of counsel's duty of candor toward the Court. The Court will not tolerate this conduct moving forward.

out again, that he opened to come out again, several of the fellow police officers had their firearms out because they didn't know how he was going to come out.

Q. Were they pointed at the defendant?
A. No, we had everything pointing to the ground."

**ECF No. 107** at 82. Defendant was approximately 15 feet away from agent Salas-Ramírez when he came out the house for the second time. As soon as he exited the house, agent Salas-Ramírez and a couple other agents approached defendant, who remained inside the house. The agents announced they "were the police and that we had a search warrant for stolen vehicles." *Id*., at 83. None of the agents had their weapons drawn when they approached defendant because "he didn't have a shirt on and you could see that he didn't have a firearm, so we holstered them." *Id*. Defendant wanted to read the search warrant, so he opened the gate to the carport for the agents. After receiving the search warrant, defendant stamped his initials on the warrant and, after admitting he did not have a license for the firearm, signed a search consent form. The totality of the circumstances in this case demonstrate that defendant's consent was free, voluntary, and thus valid for Fourth Amendment purposes.

Under the facts of this case, the Court harbors no doubt, and defendant failed to point to evidence stating otherwise, that defendant had "knowledge of the right to refuse consent[,]" was not in a "vulnerable subjective state[,]" and that there is no evidence of "inherently coercive tactics." *United States v. Bey*, 825 F.3d 75, 80 (1st Cir. 2016)(quoting *United States v.*

*Twomey*, 884 F.2d 46, 51 (1st Cir. 1989). Indeed, defendant was allowed to go back into his home untouched and unquestioned by the agents. He remained inside for ten minutes, during which time he could have done many things, including calling a lawyer, family member or friend for advice or support. Moreover, defendant had ample time to wake up, dress or freshen up before meeting the agents who remained outside of his home. By choosing to go back inside his house defendant displayed his understanding that he was not apprehended and that he had a right to make decisions of his own despite the presence of the law enforcement agents. Finally, the evidence confirms that there were no coercive tactics and that he requested to read the search warrant before taking any decision.[24]

Defendant also takes issue with the magistrate judge's determination (based on the testimony heard during the evidentiary hearing and evidence submitted) that defendant was not handcuffed when he signed the search consent form. Defendant points to no testimony in any way contradicting the testimony of the government's witnesses credited by the Magistrate Judge. Instead, he only proffers counsel's interpretation of a photograph which, according to counsel, depicts handcuff marks on defendant's wrist. **ECF No. 119** at 17. Based solely on counsel's interpretation (because defendant did not testify), the defense argues that the Magistrate Judge erred in not considering that defendant was handcuffed before signing the

---

[24] **ECF No. 107** at 98-100: "Q. All right and at any time while the defendant was reading and filling out these forms and signing them, was any officer pointing a weapon at him? A. No, of course not. Q. As we saw the photos –- while he was signing the documents, was he restrained or handcuffed? A. No, no, he hadn't been arrested. Q. Did you or any other officer raise your voice or shout at the defendant? A No."

search consent form. *Id.*, at 17-18. Yet, once again, defendant fails to proffer a single piece of evidence or portion of testimony backing up his theory. hThus, in the infinite realm of possibilities--in which counsel's (not a witness) suggestions are made-- the marks on defendant's hands could be completely unrelated to this case.

In any event, the First Circuit has held that being handcuffed is no benchmark for coerciveness. *See United States v. Barnett*, 989 F.2d 546, 555 (1st Cir. 1993) (consent provided after defendant "was met at the door of his home by seven or eight law enforcement officers, with guns drawn," was "arrested and handcuffed," and was "advised ... of his Miranda rights" not coerced); *United States v. Jones*, 523 F.3d 31, 38 (1st Cir. 2008)(consent provided after "some ten to fifteen government agents, guns drawn, entered [the defendant's] hotel suite without knocking, handcuffed him, placed him in a separate room, and proceeded to interrogate him" not coerced). As discussed several times over in this Opinion and Order, the totality of  circumstances in this case show a very different story from the one portrayed in defendant's objections.

> **(ii)      Defendant's consent was intelligent and voluntary**

Defendant next challenges the validity of his consent by claiming that "he did not understand [its] purpose and [its] scope." **ECF No. 119** at 15. Notably, most of his arguments calling into question his understanding and voluntariness impermissibly rely on his affidavit, which he submitted for purposes of securing an evidentiary hearing. *See* **ECF No. 119** at 15, 16,

18, 20. Based on this uncorroborated affidavit (because defendant did not take the stand at the suppression hearing), the defense tries to minimize the Magistrate Judge's findings of facts.

This tactic leaves much to be desired. The defense asks the Court to give more weight to a conclusory and uncorroborated affidavit than to the witnesses' testimony, which, of course, was subject to cross-examination. Defendant fails to realize, however, that the Court can and hereby disregards his affidavit statements for this purpose since it does not "allow the government to test [his attestations] through cross-examination[.]" *United States v. Phillipos*, 849 F.3d 464, 469 (1st Cir. 2017); *United States v. Baskin*, 424 F.3d 1 (1st Cir. 2005). Indeed, "if… after the government presents sufficient evidence of voluntariness, the defendant refuses to testify or present any evidence besides his or her affidavit, the district court is not required to accept the affidavit into evidence." *United States v. Phillipos*, 866 F.3d at 66; *see United States v. Oladipo*, 2023 WL 4552112, at *15 (D. Mass., 2023); *United States v. Cabral*, 965 F.Supp.2d 161, 167–68 (D. Mass. 2013) (recognizing court's discretion under *Baskin* to strike affidavit if, during the suppression hearing, defendant elects not to testify, but declining to exercise that discretion in the circumstances); *United States v. Ramos*, 591 F.Supp.2d 93, 113–14 (D. Mass. 2008) (same). Accordingly, defendant's affidavit-based challenge the Magistrate Judge's findings of fact as well as the testimony and evidence must necessarily fail.

Even if the Court delved into defendant's arguments, they are nonetheless meritless. He first argues that agent Salas-Ramírez misinformed him about the object of the search warrant.

**ECF No. 119** at 15. According to defendant, the testimony heard by the Magistrate Judge proves that Salas-Ramírez told defendant they had a search warrant for his home. He also claims that he was intimidated. *Id.*, at 16.[25] Based on a poorly constructed version of the testimonies, he further claims that there is no credible evidence proving that he signed a completed version of the consent form or otherwise consented to the search of his home. He argues that the Magistrate Judge erred when it "bought Sala's testimony that the Miranda form was signed before the consent form…" *Id.*, at 19. In a separate heading, and again placing much stock on his claim that the agents misinformed him about the scope of the search warrant vis-a-vis his home, defendant also argues that his consent "was acquiescence to the police officers' apparent lawful authority to search his home." *Id.*, at 19-20.

First of all, there is absolutely no evidence or testimony that contradicts the testimony of Atiles-Cruz or Salas-Ramírez. And, far from defendant's *Frankensteinian* version of the testimonies in the case, they were perfectly credible to the Magistrate Judge.

The record reflects that Salas-Ramírez consistently testified that they called out defendant announcing they had a search warrant for the "place." Although Salas-Ramírez did not use words with the precision a seasoned attorney would, he clearly explained that they had a search warrant to search for stolen vehicle and parts within defendant's property. To wit, his testimony was: "… about ten minutes notifying him that we're the police… that we

---

[25] This contention only finds "support" in his affidavit in support of a request for a hearing, which, as explained before, the Court disregards.

had a search warrant for the home. Q. For the home or for – A. No, that we had a search warrant against him, for him, for the place." **ECF No. 107** at 81. He added, "I told him that we were the police and that we had a search warrant for stolen vehicles." *Id*., at 82. On cross examination, he clarified, "Q. … you said on direct testimony that you said you had a search warrant for the house. A. But we had a search warrant for *vehicles and parts of that home*." *Id*., at 105 (emphasis added). Accordingly, the record clearly disproves defendant's argument that the law enforcement agents misinformed defendant about the scope of the search warrant. Moreover, defendant does not deny the fact that he asked to see the search warrant and that the agents complied without hesitation. Therefore, his "lawful authority" argument necessarily fails, too.

Aside from defendant's version of the testimonies (which has more holes than a block Swiss cheese), he points to nothing on the record to contradict Salas-Ramírez's testimony that he (1) reviewed the search warrant, the *Miranda* warnings form, and the search consent form, (2) asked questions about them to the agents, (3) understood them, and (4) placed his initials and signature on them. As detailed in the introductory sections of this Opinion and Order, there is both testimony and photographs in support of this testimony. The Magistrate Judge also included in her R&R a detailed narrative of her factual findings with very precise citations to the record.[26] Accordingly, the Court need not parrot here the portions of the testimony and

---

[26] A summary can also be found in the introductory sections of this Opinion and Order.

evidence that dismantle defendant's challenge. Therefore, defendant's objections to the Magistrate Judge's finding in connection with defendant's consent are overruled.

**V.      Conclusion**

For all the reasons stated above, the Court hereby **OVERRULES** defendants' objections to the R&R at **ECF No. 119; ADOPTS** the **R&R** at **ECF No. 117,** and **DENIES** defendants' motion at **ECF Nos.  44, 65.**

**SO ORDERED**.

At San Juan, Puerto Rico, on this 17th day of May 2023.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**